<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MITSUI O.S.K. LINES, : | |
| : | Civil Action No. 04-2278(SDW) |
| Plaintiff, : | |
| v. : | |
| CONTINENTAL SHIPPING LINE INC., : | **OPINION** |
| MICHAEL LYAMPORT, individually; : | |
| CARMEN VIZCAINO, individually; : | |
| OSCAR GALLION, individually; an : | June 29, 2007 |
| CONTINENTAL SHIPPING LINE, : | |
| (CALIFORNIA), INC., as a successor in : | |
| interest to Continental Shipping Line Inc. : | |
| Defendants. : | |

**WIGENTON,** District Judge.

Before this Court are Plaintiff Mitsui O.S.K. Lines's ("Plaintiff" or "Mitsui") Motions For Summary Judgment against Defendant Continental Shipping Line, Inc. ("Continental") and for Partial Summary Judgment against individual Defendants Michael Lyamport ("Lyamport"), Carmen Vizcaino ("Vizcaino"), and Oscar Gallion ("Gallion") pursuant to Fed. R. Civ. P. 56. The individual Defendants now represent themselves pro se and the corporate Defendant Continental Shipping Line, Inc. is unrepresented by counsel due to the disqualification of their joint counsel. The Court, having considered the parties' submissions and having decided the motions without oral argument pursuant to Fed. R. Civ. P. 78, and for the reasons set forth below, grants the Motion for Summary Judgment against Continental in part and denies the

1

Motions for Partial Summary Judgment as to the individual Defendants.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

I.     BACKGROUND AND PROCEDURAL HISTORY

This is a lawsuit for breach of contract based on goods delivered to and services rendered by Plaintiff for Defendant Continental Shipping Line, Inc. Both Mitsui and Continental are corporations engaged in international shipping.[1] Mitsui has filed a 16 count Third Amended Complaint alleging, inter alia, that by utilizing their shipping services, failing to maintain the required insurance bond[2], accepting payment for services from third parties, and failing to remit the amount due to Mitsui, Continental's actions, and those of its individual defendant employees, sound in fraud and unjust enrichment.[3] Plaintiff further alleges individual Defendants Lyamport, Vizcaino, and Gallion - as officers and shareholders of Defendant Continental - received payments from customers, failed to pay Mitsui for its services, and instead intentionally diverted and exhausted funds for personal expenses, including the funding of successor in interest

---

[1] Defendant Continental Shipping Line (California), Inc. ("Continental California"), was incorporated on June 28, 2005 by or on behalf of Defendant Gallion, and is also engaged in international shipping. (Pl.'s Compl. ¶6). Plaintiff has not moved for summary judgment on this Defendant at this time.

[2] Mitsui asserts that Continental allowed their insurance bond to lapse while continuing to accept shipments and book new transactions and that under the Ocean Shipping Reform Act of 1998, an international carrier is required to carry insurance before entering into a service contract with an ocean transportation agent. 46 U.S.C. § 1709 (current version at 46 U.S.C.S. §41104 (2006)). (Pl.'s Compl. Ct. 10, ¶4). As a result of this lapse in insurance coverage, Mitsui argues that it was unable to completely satisfy their losses through Aegis Insurance Company. (Pl.'s Compl. Ct. 10, ¶13).

[3] Mitsui has moved for partial summary judgment in terms of liability for each individual defendant, followed by a proof hearing as to the amount of liability for amounts due if successful.

company, Continental California, and fraudulently transferred property.

Continental has counterclaimed that each individual defendant was at all times acting within the scope of his or her duties of employment, and is therefore not liable for the debts of employer Continental. (Def.'s Answer ¶ 23, 29, 33). Further, Continental counterclaims that the inclusion of each individual employee is without legal basis, was intended to harass the defendants, and that as a result each individual defendant seeks damages in the amount of $25,000.00. (Def.'s Answer ¶ 26, 31, 36).

Plaintiff alleged that the total amount due for services rendered was $111,075.00. This sum reflects the amount of receivables based upon bills of landing for ocean freight services obtained by Defendant between June 2002 through approximately April 2004. However, over the course of this lawsuit, Defendant's insurance bond carrier, Aegis Insurance Company ("Aegis") settled individually with Mitsui in the amount of $30,000, resulting in their dismissal on November 2, 2005. The resulting amount in controversy is $81,075.00. (Pl.'s Compl. Ct. 1, ¶2).

Plaintiff filed this lawsuit in the Federal District Court, District of New Jersey on May 13, 2004. Since that time, Plaintiff has amended its Complaint three times. In addition, while all Defendants were initially represented by joint counsel, counsel was disqualified from representing any Defendant by Order of United States Magistrate Judge Madeline Cox Arleo on September 20, 2006. No attorney has entered an appearance for the corporate defendant, nor the individual Defendants since that time.

## II.     LEGAL STANDARD

### A.     *Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To prove that no genuine issue of fact exists, "a movant must present a factual scenario without any unexplained gaps". National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1581 (3d. 1992) (citation omitted). "Where the movant is the defendant, or the party without the burden on the underlying claim, the movant has no obligation to produce evidence negating its opponent's case". Id. "The moving party merely has to point to the lack of any evidence supporting the non-movant's claim. Id. (citation omitted). Where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent. Id. When the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. Id. (citation omitted.)

Once the moving party meets its initial burden, the burden then shifts to the non-movant who "may not rest upon the mere allegations or denials of [its] pleading, but the [non-movant's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "If the [non-movant] does not so

respond, summary judgment, if appropriate, shall be entered against the [non-movant]." Fed. R. Civ. P. 56(e). The court may not weigh the evidence and determine the truth of the matter. Anderson, 477 U.S. at 249. All justifiable inferences of the non-moving party are to be drawn in his favor. Id. at 255 (citation omitted).

### III.   DISCUSSION

#### A.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO CONTINENTAL

Plaintiff cites to a June 5, 2004, Settlement Agreement negotiated with Defendant Vizcaino on behalf of Continental and Mitsui as the basis of its summary judgment motion against Continental. The Agreement is signed by Defendant Lyamport on behalf of Continental, whereby Continental agreed to pay a debt of $111,075.00. (Cert. of Counsel in Support of Motion for Summary Judgment ¶10-13, Ex. B.) Mitsui submits that by entering into this agreement, Continental has unequivocally admitted its original debt of $111,075.00. (Pl.'s Compl. Ct. 11, ¶7). Plaintiff has moved for summary judgment[4] as to Continental claiming that the company now owes it $81,075, which reflects the $30,000 offset for the Aegis settlement. Continental has denied all allegations as to an admission of debt (Def.'s Answer ¶ 16), despite one $3,200 payment by Continental to Mitsui on May 5, 2004 - made one month before the execution of the Agreement. However, none of the individual defendants take issue with the existence of a debt owed by Continental to Mitsui. For example, Gallion states in his opposition that

---

[4] Plaintiff has failed to file a statement of undisputed facts. This Court will consider counsel's Certification in Support of Mitsui's Motion for Summary Judgment as that statement. This Court will consider pro se Defendants' affidavits as objections to those facts.

> **I do not dispute that the corporate defendant Continental Shipping Lines Inc. is liable to Plaintiff for this claim**. I do dispute Plaintiff's attempt to breach the corporate veil to asset [sic] this claim against the former officers of that company.

(Gallion's Affidavit in Opposition to Motion for Summary Judgment at ¶ 4.) (Emphasis added.)

While Plaintiff seeks to hold Continental to this amount, it concedes in its Complaint that the Agreement was unilaterally altered by Defendant and that the changes were not acceptable to it. Therefore, the Agreement is not valid and is not binding on the parties.  Nevertheless, the existence of a debt is not disputed by any party.  The amount of the debt is a more difficult question, as Plaintiff has not provided the Court with documentation regarding payments or invoices.  Accordingly, this Court finds there is no genuine issue of material fact as to the existence of a debt owed by Continental to Mitsui and partial summary judgment as to Continental is GRANTED for liability only.

## B. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE INDIVIDUAL DEFENDANTS

Plaintiff seeks to find each individual Defendant liable for the debt of Continental based on their actions as employees and officers of the company.  The Court will address each legal theory separately that Plaintiff bases summary judgment upon as to all Defendants.

### 1. *Piercing the Corporate Veil/Alter Ego*

Plaintiff seeks to pierce the corporate veil as to Continental to reach each individual Defendant and seeks that this Court grant it summary judgment as to liability against the individual Defendants because they used Continental as an alter ego for their personal expenditures. Mitsui has argued that Continental California, which it contends is wholly owned by Defendant Gallion, is a successor in interest to Defendant Continental. (Pl.'s Compl. Ct. 16, ¶ 10). As support for this argument Mitsui alleges that upon incorporating, Gallion received a customer list, contacts, a computer server, and other goods and services from Continental for zero consideration. (Pl.'s Compl. Ct. 16, ¶ 9). Mitsui thus contends that as a successor in interest, Defendant Continental California is liable for debts owed by Defendant Continental. (Pl.'s Compl. Ct. 16, ¶ 12). As to Defendant Vizcaino, Plaintiff seeks to hold her liable for the debt because she had control over all electronic wire transfers and was able to access the bank accounts of Continental.

It is uncontested that Continental no longer operates as a business. It is also uncontested that in additional to business expenses, Lyamport and Gallion had other expenses paid by Continental as they were not receiving salaries.[5] Vizcaino was receiving a mere $700 weekly for her employment. It also appears Continental had numerous other paid employees. Nevertheless, Plaintiff has failed to establish that Continental California is a successor in interest of Continental.

---

[5] According to Defendant Vizcaino, it appears at some point in 2004 Defendant Lyamport began receiving a salary.

Where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debt and liabilities of the transferor. There are exceptions to this rule and those are:

1. Where there is an express or implied agreement to assume the other company's debts and obligations;
2. The purchasing company was a mere continuation of the selling company;
3. There was a de facto consolidation or merger of the corporations; or
4. The transaction was fraudulent.

Glynwed v. Plastimatic, Inc. et al., 869 F.Supp. 265, 271 (D.NJ. 1994).

Plaintiff's motion contends Continental California is a continuation of Continental, the exception noted in the second factor. When determining whether a particular transaction amounts to a de facto consolidation or mere continuation, most courts consider four factors: continuity of management, personnel, physical location, assets, and general business operations; cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and continuity of ownership/shareholders. Id. at 275-76.

Only Gallion served as an officer at both Continental and Continental California, and no other Defendant has any relation to the California company. Gallion's role alone is insufficient to infer that California is a continuation of Continental. See Portfolio Fin. Servicing Co. v. Sharemax.com Inc., 334 F.Supp. 2d 620 (D.NJ. 2004). Here, while Continental California appears to also be a shipping company with business referred to it at least in part by Continental (Gallion Dep. at 9:15 - 10:11, April 12, 2006), there is no continuity of management as Gallion is the only individual from Continental at Continental California and it is unclear whether he has

any partners, business associates or even employees.  Although Gallion took a so-called customer list from Continental, it is also unclear whether he can access this information as it is contained in a computer management program.  (Id.)  Further, it does not appear that Continental California assumed the liabilities of Continental with respect to debts owed to other creditors **in order to carry on their business**.  Continental was already in dire financial straits and was incapable of carrying on its own ordinary business.

      Ordinarily, a parent corporation is regarded as a separate entity from a subsidiary corporation, and therefore is not labile for the acts of the subsidiary.  United States v. Bestfoods, 524 U.S. 51, 61 (U.S. 1998).  However, the alter-ego doctrine is a tool of equity which allows the court to pierce the corporate veil to hold the parent corporation liable for the acts of the subsidiary.  Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001).  The doctrine is usually used to pierce the corporate veil of a subsidiary company in order to reach the parent company, however it can also be applied in the reverse to reach the subsidiary corporation.  Portfolio, 334 F. Supp. 2d at 627.  The test is applied when the court must use veil piercing to prevent the corporate identity from being used to execute fraud or injustice.  Id.  The Third Circuit has held that **piercing the corporate veil is a remedy which is reserved for extraordinary circumstances**.  Trustees of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Latex, 332 F.3d 188, 197 (3d Cir. 2003) (emphasis added).

      Plaintiff has failed to meet the requirements for piercing the corporate veil, an equitable remedy to be reserved for "extraordinary circumstances".  The Third Circuit has set forth a veil piercing test to determine when and if Continental California should be liable for Continental and

whether the individuals should be liable for Continental, wherein it must be established to what extent there existed:

1. Gross undercapitalization;
2. Failure to observe corporate formalities;
3. Nonpayment of dividends;
4. Insolvency of debtor corporation;
5. Siphoning of funds from debtor corporation by the dominant stockholder;
6. Non-functioning of officers and directors;
7. Absence of corporate records; and
8. Whether the company is merely a facade for the operations of the dominant stockholder.

Pearson, 247 F.3d at 484-85.

In Pearson, the Court stated the relevant inquiry was whether the debtor corporation was more than a legal fiction, and further stated that the burden was "notoriously difficult for plaintiffs to meet." Id. at 485.  To illustrate, the Court discussed how other courts have refused to pierce the veil even when subsidiary corporations use the trade name of the parent company, when the subsidiary uses the administrative support of the parent, and even where the two companies have a significant economic relationship.  Id.  With respect to individual liability, courts have been hard pressed to pierce the corporate veil to reach the personal assets of corporate officers and employees.  This is so even where the conduct of officers consists of large monetary withdrawls and re-payments of loans.  See Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1521, 1523 (3d Cir. 1994) (involving corporate withdrawls of $4.5 million for personal use and partial repayment of a personal loan).[6]

---

[6] Mitsui also claims Defendant Vizcaino made a personal loan to Continental for the amount of $50,000, and that she later received preferential payment as an inside creditor, while employed by Continental. (Pl.'s Compl. Ct. 8, ¶3).  However, this Court is not persuaded by this argument and notes Vizcaino was never fully repaid for her loan.

Here, it appears that Continental was operating and conducting a valid business. They had other clients and were providing shipping services, albeit not successfully, and Defendant Vizcaino was attempting to pay creditors. While the individuals appear to have been poor business operators, Plaintiff has not proffered genuine and material facts from which a reasonable jury could find in Plaintiff's favor that the individuals abused the corporate structure for fraudulent, unjust inequitable circumstances. Their actions do not rise to the level envisioned in Pearson and Portfolio. Accordingly, summary judgment is DENIED.

### 2. *Spoilation of Evidence*

Mitsui filed its complaint in May 2004, and claims such filing should have put Continental on notice that it was under an obligation to retain any documents that could be requested pursuant to Fed.R.Civ.P 26. (Pl. Supplemental Mem. for Summary Judgment against Defendant Michael Lyamport at 7). However, Mitsui contends that in response to its requests for discovery, Defendants admitted they destroyed or abandoned books and bank records, thereby constituting a spoilation of evidence, which should result in an inference by the trier of fact in its favor. (Pl.'s Compl. Ct. 14, ¶4, 8-9).[7] Further, Mitsui alleges individual Defendants destroyed these documents in order to obscure their use of funds for purposes other than proper payment of Continental's debt. (Pl.'s Compl. Ct. 14, ¶ 8). Continental and the individuals have denied all such allegations. (Def.'s Answer ¶ 19).

Mitsui claims Continental maintained bank accounts into which it deposited funds received for services rendered by vendors, such as Plaintiff. Specifically, Plaintiff asserts Continental has failed to produce bank records for June 2002 through April 2004, signature cards

---

[7] The inference Plaintiff seeks is to lend further support for its motions on liability.

related to those accounts[8], as well as booking slips, dispatch sheets, weigh bills, and bills of landing related to Continental's shipping services. (Lyamport Dep. 4:10-12, Oct. 31, 2005). Mitsui claims that Continental's bank records and other financial documents are necessary to ascertain how Continental spent the funds it received from its customers. However, Defendants claim to be unable to produce all of Continental's bank records for the time period in question. (Pl. Compl. Ct. 13, ¶3, 6, 7). Defendant Lyamport stated that when Continental moved its Manhattan offices in December 2004, while litigation was pending, the bank records and books were "lost". (Lyamport Dep. 8:14-24, Oct. 31, 2005). Defendant Gallion also admitted that various documents, including bank records, were left behind when Continental moved its offices. (Gallion Dep. 10: 21-25, 11: 1-8, April 12, 2006). However, Lyamport's affidavit firmly denies that all of Continental's business records and bank statements were lost. (Lyamport Aff. ¶5). According to Lyamport, some of the records were misplaced during the move, but the bulk of Continental's business records were in fact turned over to Mitsui during discovery. Id. Former counsel for the Defendants stated that hundreds of pages of discovery was produced to Plaintiff. (Lyamport Dep. 52:10-12). Further, Lyamport states that the misplaced records were not intentionally abandoned. Id. As to Vizcaino, when asked about the missing bank records for 2003, she stated that Evelyn, Continental's CPA retained the bank records for every year[9]. (Vizcaino Dep. 13:22-25, 14:1-10). Spoilation of evidence is the "[d]estruction or significant

---

[8] Defendant Vizcaino has provided a copy of the bank signature card at issue, which reveals she is not a signatory on the account. She also avers that she recently obtained the form by requesting it from the bank.

[9] Further, Vizcaino ended her employment with Continental in December 2004. It has not been established that Vizcaino was still employed by Continental when the company moved to its new offices in New York.

alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). Potential sanctions for spoilation are: (1) dismissal of a claim or judgment for the prejudiced party; (2) suppression of evidence; (3) a spoilation inference; fines; attorney fees. MOSAID Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004). In determining if dismissal or suppression of evidence are appropriate, the court should consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." Id. Sanctions are meant to serve a remedial function, and to return the prejudiced party to the position it would be in had the spoilation not occurred. Id. Sanctions are meant to "level the playing field" and ensure that one party is not disadvantaged by the other's unilateral destructive acts. Id. at 336.

Among the possible sanctions for spoilation, dismissal and suppression of evidence are the most severe, while the spoilation inference is the lesser sanction. A spoilation inference is an adverse inference that permits the jury to infer that "[d]estroyed evidence might or would have been unfavorable to the position of the offending party." Scott v. IBM Corp., 196 F.R.D. 233, 248 (D.N.J. 2000). The inference is a common-sense conclusion that a party who destroys evidence would do so in an effort to hide relevant information. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995). Before the court may conclude that a spoilation inference should apply the following factors must be met: (1) the evidence in question must be under the adverse party's control; (2) it must appear that there has been an actual suppression of evidence, it must have been destroyed intentionally and not in a routine manner of disposal; (3)

the evidence destroyed must be relevant; and (4) it must have been reasonably foreseeable that the evidence would later be requested and discoverable." Scott, 196 F.R.D. 233 at 248. While a litigant is not expected to retain every document connected with its activities, it is under a duty to retain those documents which it reasonably should know will be requested during litigation. MOSAID Techs., 348 F. Supp. 2d 332 at 336.

  Mitsui claims it is missing Continental's bank records for June 2002 through April 2004 and records related to its shipping services. It is apparent at least some of these records have been obtained. For example, Defendant Lyamport has testified that Continental maintained two bank accounts in 2003, specifically one at Citibank and one at Commerce Bank. (Lyamport Dep. 12:18-25, Oct. 31, 2005). Mitsui has been provided some records from these banks, as they were entered at his deposition as exhibits. Although copies were not provided in the moving papers, these documents appear to reflect various ATM withdrawals. (Lyamport Dep. 24:14-22, 25:3-14, Oct. 31, 2005). Defendant Vizcaino's statement that Evelyn, Continental's CPA, maintained the bank records and is believed to be in possession of them makes it unclear why Mitsui has not been able to retrieve these records from the CPA, or the banks where the Continental accounts existed. (Vizcaino Dep. 13:22-25, 14:1-4, Oct. 31, 2005). Further, while Plaintiff seeks the signature cards of the accounts at issue, Vizcaino herself was able to obtain a copy of the Commerce Bank Corporate Banking Resolution listing the signatories for the account. (Vizcaino Certification Nov. 27, 2006). Moreover, as to the reasons for the withdrawls by Defendants, Lyamport himself testified he used the ATM card linked with Continental's account to make withdrawls if he needed extra funds for personal or company-related expenses. (Lyamport Dep. 37:12-16, Oct. 31, 2005). Vizcaino similarly testified.

Because a spoilation inference is primarily used to "level the playing field" and return the prejudiced party to the position it would occupy had the spoilation not occurred, it is not proper in this instance. MOSAID Techs., 348 F. Supp. 2d at 336. While Mitsui may be missing Continental's bank records for June 2002 through April 2004, Plaintiff has failed to set forth why Mitsui would not be able to retrieve these records from Continental's CPA, or from the bank itself. Further, Defendant Vizcaino has provided a copy of the Commerce Bank Corporate Banking Resolution listing the signatories for that account, which Mitsui named as one of the documents that was missing. A spoilation inference is proper where the prejudiced party has been disadvantaged by the offending party's unilateral destructive acts, in a manner that compromises the integrity of the court. Id. at 335. Mitsui has not shown that it has been prejudiced in this manner. Accordingly, Plaintiff's request for a spoilation inference is DENIED.

### 3. *Fraudulent Conveyance*

Mitsui alleges Continental obtained title to a condominium in Connecticut as payment for services rendered by it, which Continental then transferred to Defendant Gallion in February 2005 for zero consideration. (Pl.'s Compl. Ct. 15, ¶ 2, 5-6). Mitsui argues this condominium is a valuable asset that was fraudulently transferred, while this matter was pending, for the benefit of the officers of Continental, as a method of avoiding payment of debt to Continental's creditors. (Pl.'s Compl. Ct. 15, ¶9-11).

The Uniform Fraudulent Transfer Act, governs frauds and fraudulent conveyances. The statute provides:

> A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor, whether the creditor's claim arose before or after the

15

>transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor"
>
>\* \* \*
>
>(2) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. § 25:2-25 (2007).

The Uniform Fraudulent Transfer Act was established to prevent a debtor from transferring his property or assets beyond the reach of creditors. Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 475 (N.J. 1999). In determining whether a transfer is a fraudulent conveyance there are two relevant questions: "(1) whether the debtor has put some asset beyond the reach of creditors which would have been available to them . . . but for the conveyance; and (2) whether the debtor transferred property with an intent to defraud . . . the creditor." Id. Title 25:2-26 lists eleven factors the court may consider to determine fraudulent intent. These factors include whether: "(1) the transfer was made to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) before the transfer was made . . . the debtor had been sued or threatened with the suit; (4) the debtor was insolvent or became insolvent shortly after the transfer was made; (5) the transfer occurred shortly before or shortly after a substantial debt was incurred." N.J. Stat. § 25:2-26 (2007). The party "seeking to set aside the conveyance bears the burden of proving actual intent". Gilchinsky, 159 N.J. at 476 (citation omitted).

The transfer of the property at issue should be straightforward. At his deposition, Defendant Gallion stated that title to the condominium in question initially belonged to him, that he "brought it to the corporation," and that Continental "paid the agreed transportation charges that cover the mortgage." (Gallion Dep. 6:15-21, April 12, 2006). Gallion further stated that in June 2005 he and defendant Lyamport executed a quit claim deed which transferred title back to him. Id. at 8:10-20. It further appears that the mortgage on the subject property was paid as part of his salary.[10] (Vizcaino Dep at 42 - 45.) However, Plaintiff has not set forth whether the condominium came to him as payment from a Continental client or elsewhere. In fact, Mitsui has not provided any documentation regarding the alleged transfer of this asset from Continental to Gallion; however, Gallion's own deposition testimony supports Plaintiff's account. Nevertheless, while the transfer of the property back to Gallion occurred after this lawsuit was filed, it appears Gallion received no consideration for it - just as he had received no consideration from the initial transfer to Continental. The benefit Gallion gained was by Continental paying his mortgage ---- in lieu of or part of a salary. Accordingly, Plaintiff has failed to establish that the property was transferred with an intend to defraud and therefore summary judgment is DENIED.

IV.     **CONCLUSION**

For all the above reasons, this Court will **partially GRANT** Plaintiff's Motion for Summary Judgment as to Continental Shipping Line Inc. and **DENY** Plaintiff's Motions for Partial Summary Judgment as to individual Defendants Gallion, Lyamport and Vizcaino.

                                                    s/Susan D. Wigenton, U.S.D.J.

---

[10] Continental also paid the mortgage of Lyamport as part of - or in lieu of - his salary.